UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FLYBAR INC.,

                                        Plaintiff,

                    -against-                                    **25 Civ. 618 (VSB) (GS)**

EXPRESS TRADE CAPITAL, INC. et al.,                              **OPINION & ORDER**

                                        Defendants.
------------------------------------------------------------------------X
EXPRESS TRADE CAPITAL, INC. et al.,

                    Third-Party Plaintiffs,

                    -against-

OLDEN GROUP, LLC, et al.,

                    Third-Party Defendants.
------------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Before the Court is non-party Mark David Graubard's ("Graubard") motion to quash a subpoena served by Plaintiff Flybar Inc. ("Plaintiff" or "Flybar") upon non-party Valley National Bank ("VNB").  (Dkt. No. 51).  For the following reasons, and to the extent outlined, Graubard's motion to quash is **DENIED**.[1]

## BACKGROUND

Flybar filed its Complaint on January 21, 2025.  (Dkt. No. 1 ("Complaint" or "Compl.")).  Flybar brings claims against Defendants Express Trade Capital Inc.

---

[1] On March 24, 2025, the Honorable Vernon S. Broderick referred this matter to the undersigned for general pretrial supervision, including non-dispositive pre-trial motions.  (Dkt. No. 21).

("Express Capital"), Garantia LLC ("Garantia"), Peter Stern ("Stern"), and Drew Cohen ("Cohen") (collectively, "Defendants") for breach of contract, fraud, aiding and abetting fraud, and unjust enrichment.  (Compl. ¶¶ 108–31).

Plaintiff alleges that Express Capital amassed a large debt position in Surf 9 LLC ("Surf 9"), a manufacturer and distributer of water sports equipment and footwear.  (*Id.* ¶¶ 1–3, 25–26).  With Surf 9 struggling to survive and on the verge of losing a large contract with a major retail brand, Defendants approached Plaintiff in September 2024 to attempt to rescue the company.  (*Id.* ¶¶ 4–5, 33).  Based on Defendants' representations that they would sell Express Capital's controlling senior secured interest in Surf 9's assets to Flybar, Flybar devoted considerable effort and financial resources to help Surf 9 stay afloat.  (*Id.* ¶¶ 6, 45–49, 63–67).  Flybar also allegedly funded certain necessary purchase orders in exchange for Defendants' agreement to provide Flybar with 100% of the proceeds from those orders.  (*Id.* ¶¶ 7, 50–55).  However, instead of ultimately finalizing a written agreement to sell Express Capital's interest in Surf 9's assets and provide the purchase order proceeds to Flybar, Defendants allegedly leveraged their now-improved position to sell the Surf 9 assets to another buyer, Olden Group LLC.  (*Id.* ¶¶ 5, 9–10).

Plaintiff alleges that as early as October 10, 2024, Defendants signed a letter of intent with Olden (or its head Yechiel Shimon Sprei ("Sprei")) to sell the relevant Surf 9 assets to Olden, yet concealed these competing negotiations from Flybar and continued to fraudulently induce Flybar into funding and operating Surf 9.  (*Id.* ¶¶

11, 74, 105).  Only in December 2024 did Defendants reveal their competing agreement and break off their relationship with Plaintiff.  (*Id.* ¶ 10).

Defendants have filed a Third-Party Complaint against Olden and Sprei (collectively, the "Third-Party Defendants"), alleging that Olden and Sprei failed to pay part of the purchase price for the Surf 9 assets, which was to be used to pay amounts due Flybar.  (Dkt. No. 36 ¶¶ 10–12).  Defendants also allege that the Third-Party Defendants agreed to indemnify and hold Garantia and Express Capital harmless for any claims brought by Flybar.  (*Id.* ¶ 13).[2]

During the course of discovery, Plaintiff apparently learned of the existence of certain financial documents related to Defendants' deal with the Third-Party Defendants.  (Dkt. No. 52 at 1).  These included documents related to transactions through Graubard's Interest on Lawyer Account ("IOLA") at VNB.  (*Id.*).  Accordingly, Flybar issued the subject subpoena to VNB (the "Subpoena"), seeking the following documents:

> Bank records, from September 1, 2024 through January 31, 2025, for account(s) maintained with Valley National Bank by or on behalf of Mark David Graubard, Esq. (a/k/a M. David Graubard, a/k/a David Graubard), 71-18 Main Street, Flushing, NY 11367-2015, or any other address, including account opening documents, banking statements, cancelled checks, deposit tickets, check book stubs, deposited items, and documents concerning wires sent and received, concerning and/or mentioning (i) Olden Group LLC, (ii) Yechiel Shimon Sprei a/k/a/ Sam Sprei, (iii) Garantia LLC, (iv) Express Trade Capital Inc., (v) Surf 9, LLC, (vi) 536 Holdings LLC, (vii) Montclare & Wachtler, LLP, (viii)

---

[2] The Third-Party Defendants have not yet appeared in this action.  Although Defendants previously stated in August 2025 that they would move for default against the Third-Party Defendants (Dkt. No. 39), they have not done so as of this time.

Roula Metaxa, (ix) Angelos Metaxas, and/or (x) Pakari Trust, including but not limited to Account No. XXXXXX1102 [the IOLA account].

(Dkt. No. 51-2 at 5).

On April 21, 2026, Graubard filed his motion to quash the Subpoena. (Dkt. No. 51). The motion included a copy of the Subpoena (Dkt. No. 51-2) and a memorandum of law in support of the motion (Dkt. No. 51-3 ("Mov. Br.")). Flybar filed an opposition to the motion on April 23, 2026. (Dkt. No. 52 ("Opp.")). Graubard filed a reply on April 27, 2026 (Dkt. No. 53 ("Reply")), and Plaintiff filed a notice of supplemental authority on May 8, 2026 (Dkt. No. 61). On May 11, 2026, the Court held a discovery conference on the matter. (Minute Entry at May 11, 2026).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs discovery subpoenas issued to non-parties. It "provides that: '[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *Somaxon Pharms., Inc. v. Actavis Elizabeth LLC*, No. 22 Misc. 162 (KPF), 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (quoting Fed. R. Civ. P. 45(d)(3)(A)).

On a motion to quash, "the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Shaw v. Arena*, No. 17 Misc. 448 (AJN), 2018 WL

4

324896, at *1 (S.D.N.Y. Jan. 3, 2018) (cleaned up).  Subpoenas issued under Rule 45 are "subject to the relevance requirement of Rule 26(b)(1)," *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011), which provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "'Relevance' is construed 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Kiss Nail Prods., Inc. v. Lashify, Inc.*, No. 24 Misc. 25 (AT), 2024 WL 1466815, at *2 (S.D.N.Y. Apr. 4, 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "To satisfy this standard, the moving party must articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." *Ekstein v. Poito Assoc.*, No. 20 Civ. 1878 (JCM), 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022) (cleaned up).

Once relevance is established, "the movant bears the burden of demonstrating an undue burden."  *Shaw*, 2018 WL 324896, at *1 (citation omitted). "Determining whether a subpoena imposes an undue burden 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it,' which 'calls upon the trial court to consider whether the information is necessary and whether it is available from any other source.'" *Kiss Nail Products*, 2024 WL 1466815, at *2 (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009)).

## DISCUSSION

### A.     Graubard's Standing to Move to Quash

Although neither party addresses the issue, it is worth accounting for Graubard's standing to bring the instant motion.  Courts in this Circuit have long recognized that parties with a privacy interest in subpoenaed documents, including financial records, have standing to oppose the subpoena.  *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at \*3 (S.D.N.Y. Jan. 18, 2008) (collecting cases); *Morelli v. Alters*, No. 19 Civ. 10707 (GHW), 2020 WL 6508858, at \*5 (S.D.N.Y. Nov. 5, 2020) ("Because the subpoenas seek financial records that implicate [Plaintiff's] personal privacy interest, he has standing to challenge the non-party subpoenas."); *LG Cap. Funding, LLC v. Exeled Holdings Inc.*, No. 17 Civ. 4006 (LJL), 2023 WL 3993751, at \*1 (S.D.N.Y. June 14, 2023) ("[C]orporations have a privacy interest in their bank records and financial records.").  "In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than 'a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.'"  *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA) (HBP), 2014 WL 5420225, at \*4 (S.D.N.Y. Oct. 24, 2014) (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 WL 57892, at \*5 (S.D.N.Y. Jan. 4, 2013)).

The subject Subpoena seeks bank records "for account(s) maintained with Valley National Bank by or on behalf of" Graubard concerning or mentioning the entities and individuals listed above.  (Dkt. No. 51-2 at 5).  Plaintiff does not

contend that Graubard lacks standing to challenge the Subpoena. Accordingly, based on the nature of the records sought, Graubard has properly alleged a privacy interest in the subpoenaed financial records sufficient to confer standing to challenge the Subpoena under Fed. R. Civ. P. 45(d)(3)(A). *See Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, No. 23 Civ. 7212 (LJL), 2024 WL 4893580, at *3 (S.D.N.Y. Nov. 26, 2024); *LG Cap. Funding*, 2023 WL 3993751, at *1.

## B.    Graubard's Failure to Seek a Conference

At the outset, Flybar contends that Graubard's motion is procedurally improper, as both the Local Civil Rules and the undersigned's Individual Practices in Civil Cases require a party to first request a conference with the Court before filing a discovery motion. (Opp. at 1). Graubard responds that these rules apply only to parties, and as a non-party he is not bound by either set of rules. (Reply at 1).

The Court need not decide that issue here because, even though Graubard did not seek a discovery conference, the Court held one. Moreover, Flybar was given a full opportunity to be heard on the merits of Graubard's motion, both in its opposition and at the conference. No useful purpose would be served by requiring Graubard to re-file his motion. And indeed, courts in this Circuit routinely rule on motions to quash without a conference at all. *See, e.g., Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, No. 13 Civ. 7204 (PAE), 2014 WL 12939056, at *1 (S.D.N.Y. Dec. 1, 2014) (denying request for conference and ruling on motion to

7

quash).  Accordingly, the Court proceeds to address Graubard's arguments on the merits.

### C.    Relevance

Graubard disputes the relevance of the records sought from VNB to this matter.  (Mov. Br. at 3).  As noted above, it is Plaintiff's burden to "articulate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." *Ekstein*, 2022 WL 783000, at *3 (cleaned up).  "There is a 'relatively low threshold for a party to show that the material sought is relevant to any claim or defense in the litigation.'" *In re OpenAI, Inc., Copyright Infringement Litig.*, No. 23 Civ. 8292, No. 23 Civ. 10211 (SHS) (OTW), 2025 WL 2846692, at *1 (S.D.N.Y. Oct. 8, 2025) (quoting *Delta Air Lines, Inc. v. Lightstone Group, LLC*, No. 21 Misc. 374 (RA) (OTW), 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021)).  In the main, Plaintiff meets this burden here.

Plaintiff's Complaint alleges, at its core, that Defendants secretly negotiated and agreed to a deal with Third-Party Defendants, concealing that transaction through fraudulent misrepresentations, infringing on and ultimately breaching a contract Plaintiff had with Defendants.  (Opp. at 1; Compl. ¶¶ 1–12, 74, 105).  From a filing in a related state action involving several of the same parties here, and Graubard, Plaintiff obtained bank records reflecting deposits into Graubard's IOLA account, individual checks dated between November and December 2024 from that account, and a record of a December 6, 2024 wire transfer from that account in the amount of $2.5 million with the notation "SURF 9 PURCHASE / REAL ESTATE

PURCHASE." (Opp. Exs. 1 & 2). Plaintiff thus seeks records showing inflows to Graubard's IOLA account related to Defendants' Surf 9 transaction and records tracing where those funds were distributed, to whom, and over what time periods.

Such discovery is clearly relevant to Plaintiff's claims. Evidence of transactions during the relevant period may provide critical insight into dealings between Defendants and the Third-Party Defendants during the same time period Defendants were allegedly negotiating with Flybar, providing admissible evidence confirming those transactions and also potentially revealing facts currently unknown to Flybar. Accordingly, Plaintiff's Subpoena is relevant to its claims. It is not, as Graubard contends, "an impermissible pre-judgment effort to investigate Defendants' assets." (Mov. Br. at 3–4).

However, Plaintiff has not demonstrated relevance for the entire time period encompassed by the Subpoena. The referenced wire transfer record relates to a large transfer in December 2024, and thus, the Subpoena is appropriately targeted for the month of December and the following month. In addition, Plaintiff provides evidence of checks written on the IOLA account in November 2024, establishing relevance for that month. Finally, Plaintiff alleges in its Complaint that Defendants and the Third-Party Defendants began discussions "as early as October 2024" (Compl. ¶ 11), and signed a letter of intent on October 10, 2024 (Compl. ¶¶ 74, 105). Accordingly, bank records as far back as October 2024 appear relevant.

September 2024 stands on a different footing. At the conference, Plaintiff stated two reasons for requesting records from September 2024: (i) September 2024

was the time period when Plaintiff began discussions with Defendants, and (2) Plaintiff intended to include a "bubble" around the relevant transactions so as to not miss out on potentially relevant discovery.  Neither of these explanations, individually or together, suffices to allow discovery for September 2024.  First, Defendants' dealings with Plaintiff in September 2024 do not impart any justification to assume that there were banking transactions involving the deal with the Third-Party Defendants at that time.  And while providing for a "bubble" month to trace the disposition of the funds that came into the IOLA account justifies extending the Subpoena's temporal scope forward to January 2025, no similar logic justifies including a "bubble" month prior to any evidence or reason to believe a relevant transaction took place.  At this juncture, therefore, Plaintiff has only established relevance for records from October 2024 through January 2025.

The Subpoena on its face might appear to be overbroad in two other material respects.  But during the May 11 conference, Flybar made clear that it intended to, and has agreed to, limit the scope of the Subpoena in both respects.

First, read literally, the Subpoena appears to call for production of all bank records during the relevant time period, and not just those pertaining to the ten entities and individuals identified in the Subpoena.  Those entities and individuals are identified after the word "including," suggesting they do not limit the "[b]ank records" that must be produced but simply illustrate the types of records (or, arguably, only the type of wire transfer records) that must be included.  During the conference, however, Flybar's counsel disclaimed any intention to seek Graubard's

entire bank records.  Rather, counsel stated that Flybar seeks only documents relating to the ten identified entities and individuals.  Thus, VNB shall only produce records relating to those entities and individuals, such as bank statements that refer to one or more of the entities or individuals and records of deposits, checks, wire transfers and the like that pertain to those entities and individuals.

Second, the Subpoena demands production of all of Graubard's accounts at VNB, not just the IOLA account.  However, at the conference, Flybar's counsel stated that Flybar is not seeking records at this time for any accounts other than the IOLA account.  Thus, VNB shall limit its production to the IOLA account.

### D.    Undue Burden

"[A]ssessing undue burden" in the context of a Rule 45 subpoena is "'a highly case specific inquiry.'" *In re Novartis & Par Antitrust Litig.*, No. 18 Civ. 4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) (quoting Wright & Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008)).

Graubard's principal argument as to why the Subpoena presents an undue burden is that Plaintiff did not go through Defendants for this information first. *See Cerco Bridge Loans 6 LLC v. Schenker*, No. 23 Civ. 11093 (DEH), 2024 WL 4165128, at *2 (S.D.N.Y. July 16, 2024) ("Another factor 'that goes to "undue burden" is whether the requested information can be obtained from the parties themselves.'" (quoting *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020))).  As Plaintiff does not present evidence that it sought discovery of these records or transactions from the parties under Rule 34 (or, to the extent the

11

ten entities and individuals are not parties to this action, from those non-parties), Graubard contends the Subpoena should be quashed at least until that effort is made.  (Mov. Br. at 3).  This argument is unpersuasive.

It is true that courts in this Circuit have remarked that "'[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 [ ] rather than subpoenaing them from a non-party witness pursuant to Rule 45.'"  *Athalonz, LLC v. Under Armour, Inc.*, No. 24 Misc. 47 (DEH), 2024 WL 1555685, at *2 (S.D.N.Y. Apr. 10, 2024) (quoting *Fishon*, 336 F.R.D. at 69).  But that preference is animated by a desire to avoid saddling non-parties, to the extent possible, with the costs and burdens associated with producing documents.  Here, the Subpoena is directed to VNB, not Graubard, and it is VNB, not Graubard, who will bear the burden of producing the relevant bank records to Flybar.  VNB has not objected to the Subpoena on undue burden (or any other) grounds.  *See, e.g.*, *In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) (denying motion to quash brought by non-party attorney for bank records as, *inter alia*, he was not the target of the subpoena and "the burden of literal compliance with the subpoena falls to a third-party" (quotation omitted)); *Merida Cap. Partners III LP v. Fernane*, No. 25 Civ. 1235 (JAV), 2025 WL 1541072, at *5 (S.D.N.Y. May 30, 2025) ("Although Defendants have standing to bring the motion [to quash non-party subpoenas seeking their financial records], they do not have standing 'to challenge the Subpoenas on the independent grounds of undue burden or relevance.'" (quoting *Silverstone Holding*

*Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202–03 (S.D.N.Y. 2023))).

At the same time, the Court recognizes that Graubard has been burdened by the Subpoena in other ways. In particular, he has filed this motion to quash, which appears to be designed, at least in part, to protect the privacy interests of Graubard's clients. Assuming without deciding that this is a form of "undue burden" that a non-party can invoke under Rule 45, it nonetheless is insufficient to justify quashing the Subpoena in this case. The preference for seeking discovery from parties first is just that—a preference, not a rigid rule; it does not prevent a party from utilizing Rule 45 in advance of Rule 34 discovery in certain instances. This is one of those instances.

First, it is highly likely that VNB will have records that Defendants "did not retain, [would] fail[] to locate, or do[] not possess." *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556, 580–81 (S.D.N.Y. 2024) (rejecting argument that non-parties' compliance with subpoena should be deferred pending party's production); *see also California Att'y Lending, LLC v. Legal Recovery Assocs., LLC*, No. 23 Misc. 20 (LJV) (MJR), 2023 WL 7037474, at *6 (W.D.N.Y. Oct. 26, 2023) (denying motion to quash where, although the court recognized "the potential availability of the subpoenaed documents through party discovery," "not all of the documents and information requested in the subpoenas are necessarily available from the" defendants). Several of the ten entities and individuals referenced in the Subpoena, including Surf 9, 536 Holdings LLC, Montclare & Waschtler, LLP, Roula Metaxa,

13

Angelos Metaxas, and the Pakari Trust, are not parties to this action and do not appear to be affiliated with or under the control of any of the parties to this action. There is no reason to believe, and Graubard makes no showing, that the documents available from the Defendants and Third-Party Defendants would be complete and identical to those in VNB's possession. Moreover, it would be inefficient and burdensome for Plaintiff to be forced to issue ten separate subpoenas for banking records that can be obtained from a single source, VNB.

Equally important, if not more so, is Plaintiff's entitlement to accurate information in discovery materials. Particularly where, as here, there are allegations of fraud, parties "should not be forced to for[]go or defer discovery of relevant information and rely upon the good faith of the defendants to produce complete and accurate records." *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 377 (W.D.N.Y. 2006). Even if Plaintiff chose to seek similar materials from Defendants and other non-parties and the records produced by VNB were somewhat duplicative, "such action would ensure discovery of all facts necessary to unearth the truth" which is "especially appropriate in a case involving fraud and deceit." *In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 28 (D. Conn. 2003); *see also Frazier v. Morgan Stanley & Co., LLC*, No. 16 Civ. 804 (RJS), 2021 WL 2709250, at *5 (S.D.N.Y. July 1, 2021) ("[T]he potential for duplicative discovery does not by itself make a subpoena improper."). In short, Plaintiff is entitled to banking records from the bank itself.

14

Accordingly, there is no undue burden to Graubard in allowing Plaintiff to subpoena the records for Graubard's IOLA account from VNB.

### E. Attorney-Client Privilege and Privacy Concerns

Finally, Graubard argues that Plaintiff's Subpoena should be quashed because it threatens to seek material protected by the attorney-client privilege. (Dkt. No. 51-3 at 7). Here again, Graubard is incorrect.

Graubard has the "burden of showing" that the material sought through the Subpoena is "protected by attorney-client privilege." *Benthos Master Fund, Ltd. v. Etra*, No. 20 Civ. 3384 (VEC), 2022 WL 4467249, at *6 (S.D.N.Y. Sept. 26, 2022) (citing *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)). Graubard clearly has not done so here, as he has not explained, in his papers or during the conference, any reason why financial documents held by a third-party bank could constitute material protected by the attorney-client privilege. Nor has the Court discerned one. Indeed, when the Court challenged Graubard's invocation of the attorney-client privilege during the conference, Graubard clarified that this objection was more focused on protecting the privacy interests of his clients who are wholly unrelated to the allegations in this action.

Graubard's concern for his clients' privacy is understandable. But this concern does not require that the Subpoena be quashed. Two important factors ensure that these privacy interests will not be materially threatened by VNB's compliance with the Subpoena.

First, there is a Protective Order in place in this action appropriately restricting the disclosure of nonpublic and confidential information produced during

discovery.  (Dkt. No. 49).  The terms of that Protective Order apply to both Plaintiff and "all third parties providing discovery in this action."  (*Id.* at 1).  At the conference, Plaintiff agreed to treat the records produced by VNB in response to the Subpoena as confidential pursuant to the Protective Order, and the Court hereby directs that all parties to this action shall treat those records as Confidential Discovery Material within the meaning of the Protective Order.  As a result, the parties will be prohibited from disclosing the records except as permitted by the Protective Order.  To the extent materials produced by VNB are submitted in connection with any filings on the docket in this action, the party submitting or referencing such records shall comply with the relevant provisions in the Protective Order and shall, in particular, be expected to redact or place under seal information concerning non-parties with no connection to this action.  This provides adequate protection against Graubard's stated concerns.  *See Metaxas v. Graubard*, No. 25 Civ. 5844 (AMD) (PCG) (E.D.N.Y. Apr. 30, 2026), Dkt. No. 89 ("To the extent there are concerns about confidential information contained in the responsive materials, the protective order entered by this Court addresses these concerns.").

Second, as noted above, Plaintiff made clear during the conference that it intended the Subpoena to be read far more narrowly than the plain text of the Subpoena suggests.  Plaintiff is only seeking, and VNB need only and should only produce, records pertaining to the ten listed entities and individuals, and only for Graubard's IOLA account.  While these limitations do not completely avoid disclosure of records concerning Graubard's clients who are unrelated to this action

16

(account statements may reference transactions involving other such clients), they further substantially mitigate any privacy concerns.

Given these limitations, the privacy interests of non-parties with no connection to this action cannot supersede Plaintiff's right to discovery.

**CONCLUSION**

For the foregoing reasons, and to the extent described above, non-party Mark David Graubard's motion to quash Plaintiff's subpoena to Valley National Bank is **DENIED**.  Plaintiff shall serve a copy of this Order upon Valley National Bank and file proof of service by no later than Thursday, May 28, 2026.  Valley National Bank shall produce bank records, from October 1, 2024 through January 31, 2025, for Graubard's IOLA Account (Account No. XXXXXX1102) concerning and/or mentioning (i) Olden Group LLC, (ii) Yechiel Shimon Sprei a/k/a/ Sam Sprei, (iii) Garantia LLC, (iv) Express Trade Capital Inc., (v) Surf 9, LLC, (vi) 536 Holdings LLC, (vii) Montclare & Wachtler, LLP, (viii) Roula Metaxa, (ix) Angelos Metaxas, and/or (x) Pakari Trust, including account opening documents, banking statements, cancelled checks deposit tickets, check book stubs, deposited items, and documents concerning wires sent and received.  The Clerk of Court is respectfully directed to close the open motion at Docket Number 51.

**SO ORDERED.**

DATED:    New York, New York
          May 22, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge

17