# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

FLYBAR INC.,

*Plaintiff*,

Case No. 1:25-cv-00618-VSB

-against-

EXPRESS TRADE CAPITAL, INC.,
GARANTIA LLC, PETER STERN
and DREW COHEN,

*Defendants*.

---------------------------------------------------------------------x

EXPRESS TRADE CAPITAL, INC.,
GARANTIA LLC, PETER STERN
and DREW COHEN,

*Third-Party Plaintiffs*,

-against-

OLDEN GROUP, LLC and
YECHIEL SHIMON SPREI,

*Third-Party Defendants*.

---------------------------------------------------------------------x

**STIPULATION FOR THE EXCHANGE**
**OF ELECTRONICALLY STORED INFORMATION**

**WHEREAS**, certain documents and information have been and may be requested, sought, produced, or exhibited by, between, and among Plaintiff Flybar Inc. and Defendants/Third-Party Plaintiffs Express Trade Capital Inc., Garantia LLC, Peter Stern, and Drew Cohen (each a "party" and collectively the "parties") to the above-captioned litigation that involve electronically stored information;

**NOW, THEREFORE**, the parties, through their respective counsel, stipulate and agree to facilitate discovery by producing such records and data in accordance with the following

Stipulation for the Exchange of Electronically Stored Information ("ESI Protocol"), as set forth below; and

**IT IS FURTHER STIPULATED AND AGREED** that, subject to the parties' written responses and objections, the ESI Protocol shall govern the production of all documents, testimony, exhibits, ESI, and any other materials and information produced by the parties in this action.

## I. DEFINITIONS

**A.** **"Electronically Stored Information"** or **"ESI"** shall have the same meaning as the usage of these terms in Federal Rule of Civil Procedure 34(a)(l)(A). Examples of ESI may include, without limitation, the following:

- Digital Communications (*e.g.*, email, instant messages, text messages, messages from workplace collaboration tools (Slack, Microsoft Teams, etc.), social media posts and messages, etc.);
- Email Server Stores (*e.g.*, Gmail, Microsoft Exchange .EDB, Microsoft O365, etc.);
- Word Processing Documents (*e.g.*, Word files and drafts, Google Docs, etc.);
- Spreadsheets and Tables (*e.g.*, Excel, Google Sheets, etc.);
- Collaboration Software Tools (*e.g.*, Microsoft SharePoint, etc.);
- Document Management Systems (*e.g.*, Documentum);
- Image and Facsimile Files (*e.g.*, .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (*e.g.*, .WAV and .MP3 files);
- Video and Animation (*e.g.*, .AVI and .MOV files);
- Databases (*e.g.*, Access, Oracle, SQL Server data, SAP, other);
- Computer Aided Design/Drawing Files (*e.g.*, .STL);
- Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);

- Calendar and Diary Application Data (*e.g.*, Outlook PST, blog entries);
- Presentations (*e.g.*, PowerPoint, Google Slides, etc.);
- Project Management Application Data;
- Task Related Data (*e.g.*, Task lists from Outlook PST);
- Backup and Archival Files (*e.g.*, Veritas, Zip, .GHO); and
- Mobile Device Applications (*e.g.*, data from smartphone applications used in the normal course of business containing relevant and responsive ESI).

**B.** **"Custodian"** refers to the person(s) in possession of potentially relevant ESI. The "custodian" of an email is the owner of the mailbox that contains the message.

**C.** **"Native"** refers to the format of ESI in which it was generated and/or as used by the responding party in the usual course of its business and in its regularly conducted activities.

**D.** **"Metadata"** means structured information about ESI that is created by the file system or application, embedded in the Document, and sometimes modified through ordinary business use. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

**E.** **"Extracted Text"** refers to text extracted from a native file, and includes, without limitation, all header, footer, and document body information.

**F.** **"Static Image"** refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on a standard computer system (*e.g.*, TIFF image).

**G.** **"Load/Unitization File"** refers to an electronic file that is used to import all required information into a document database, including, if available, document images, Extracted Text or OCR text, Native format files where required by this Stipulation, and Metadata, as well as information indicating document breaks, and document relationships such as those

between an email and its attachments and a document and information related to embedded content.

**H. "Bates Number"** refers to a numbering system used to identify individual pages of documents where each page (or native file) is assigned a unique, sequential number, used in conjunction with a designated prefix to identify the producing party.

**I. "Storage Media"** refers to an object or device, real or virtualized, including, but not limited to, a disc, tape, computer, mobile device, smartphone, tablet, physical storage server, cloud system (public, private, or hybrid), or other device on which data is stored.

## II. EMAIL ESI

**A. Selection of Custodians.** No later than 20 days after this Stipulation is filed, each party shall identify up to five (5) proposed custodians of the other party from whom the identifying party seeks to obtain email ESI. Consistent with Section II(E) below, the parties shall meet-and-confer regarding any disagreement concerning appropriate custodians.

**B. Agreement on Search Terms.** No later than 20 days after this Stipulation is filed, each party shall submit a list of proposed search terms to be applied against the opposing party's custodian emails and the opposing party shall timely provide a hit count reflecting the number of documents returned by the proposed search terms. The parties shall also supply the date range for which the custodians' emails should be searched. Consistent with Section II(E) below, the parties shall meet-and-confer regarding any disagreement concerning appropriate search terms.

**C. Application of Search Terms.** Search terms shall be applied to all party custodians identified pursuant to Section II(A) above. All queries will be run in a non-case sensitive manner.

**D. Production of Custodian Emails.** Custodian emails returned by any agreed-upon search terms shall be reviewed and all responsive, non-privileged documents shall be produced on a rolling basis and in accordance with the discovery schedule in the litigation.

**E. Good Faith Efforts.** The parties shall use good faith efforts to mutually agree upon custodians, search terms, and appropriate search methodologies, and shall consider, in good faith, requests by either party to supplement or refine lists of custodians or search terms. The parties shall further attempt to cooperatively resolve any disputes regarding custodians or search terms. If the parties are unable to resolve any dispute themselves, either party may submit their dispute to the Court pursuant to the applicable rules of the Court and New York law.

**F. Duty to Conduct Reasonable Inquiry.** Notwithstanding the ESI search protocols agreed to herein, the parties may not substitute such protocols for their obligations under the Federal Rules of Civil Procedure to otherwise undertake a reasonable inquiry for responsive documents, and they shall produce any relevant or responsive documents found through means other than the agreed upon search terms and parameters.

## III. NON-EMAIL ESI

**A.** Non-email ESI shall be subject to manual searches by the parties to the extent that relevant documents requested by the parties exist in non-email ESI format. The parties are not expected to perform searches of email ESI for potentially responsive documents in addition to the custodian/search term searches set forth in Section II above. Non-email ESI shall be produced on a rolling basis and in accordance with the discovery schedule in the litigation.

## IV. FORMAT OF PRODUCTION

**A. General Production Format.** ESI that can be readily converted to TIFF files will be produced as TIFF documents except as set forth below. Any ESI agreed to be produced in native

format shall be produced with metadata intact, except where this is not practicable or where the metadata is subject to a claim of privilege. If it is not practicable for the responding party to produce ESI in native format, the responding party shall promptly notify the requesting party of the issue and the parties will confer and attempt to agree upon an alternative production format that is acceptable to the requesting party.

1. **Word or Google Documents.** Word, Google Documents, or other word processing format files will be produced in TIFF format with tracked changes, comments, and any other markup displayed, and will be accompanied by their associated native versions. Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document where reasonably possible. Other objects embedded in word processing documents will be extracted and produced as separate files, maintaining a parent-child relationship.

2. **PDF Documents.** PDF documents will be produced in TIFF format with hidden information, comments, notes, and any other markup displayed and will be accompanied by their associated native versions to the extent feasible.

3. **Excel and Google Sheets.** Excel, Google Sheets, and any other spreadsheet format documents will be produced in native format. These files will be redacted where appropriate by use of native redaction software or, if use of such software is not proportional, by overwriting the data contained in a particular cell, row, column, or tab with the word "REDACTED." These documents will be identified as "Redacted" within the "REDACTED" field in the .DAT file. If the act of redacting one or more cells results in the alteration of the contents of any other cell, the document will be identified as "Redacted-Altered."

**4. PowerPoint and Google Slides.** PowerPoint, Google Slides, and any other presentation format documents will be produced in native format. Native presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. If any redacted presentation contains video or audio elements, the video or audio will be produced as separate native files with the appropriate attachment relationships.

**5. Metadata Extraction.** If a document is converted from native format to any other format as provided herein, the responding party shall extract and produce the agreed upon Metadata from the original native file along with the additional Metadata fields described below, including the hash value for the original file.

**B. Production Specifications.**

**1. Native productions.** All native productions will be produced in a way that identifies and maintains the file structure of the data being produced. This will be accomplished by providing a load file identifying the agreed upon Metadata fields described below. The load files shall be consistent with industry standard Concordance load files such as .DAT or .OPT files. If native documents are to be used or attached to pleadings or papers filed with the Court, the party offering the native document must identify the document as native format and provide the slip sheet produced by the responding party for each native file, including Bates stamp and agreed upon Metadata fields, for authentication purposes. A slip sheet shall be produced for all native files at the time of their production, including Bates stamp and agreed upon Metadata fields.

**2. Image productions.**

a. Physical Documents. Documents that originally existed as ESI but now exist only in paper form, or documents that were originally generated in paper form, shall be

produced as single page TIFF files along with an OCR acquired text file containing page break indications where available and the agreed upon Metadata fields listed below. When documents are subjected to the OCR process, the settings of the OCR software shall maximize text quality over process speed. Settings such as "auto-skewing," "auto-rotation," and the like shall be turned on when documents are run through the process. In scanning paper documents, distinct documents shall not be merged into a single record and single documents shall not be split into multiple or several records. Parent-child relationships shall be preserved. In the case of organized compilations of separate documents (*e.g.*, a binder containing separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document at any attachment fields.

b. ESI. For ESI produced as TIFF images, native format files shall be converted to single-page TIFF images. Accompanying the TIFF images shall be a multipage text (.TXT) file containing searchable text from the native file. Load files for TIFF images should be created and produced together with their associated TIFF images to facilitate the use of the produced images by document management or litigation support database systems and provide the Metadata agreed upon below. The parties shall meet and confer to the extent necessary to determine how their productions can be made reasonably usable for the requesting party and to facilitate the import and use of the produced materials with a particular document management or litigation support system.

**C. Duplicates.** The parties are not required to produce exact duplicates of ESI stored in different locations. The parties shall deduplicate identical ESI, which will be determined as follows:

1. Electronic files will be deduplicated based on calculated MD5 or similiar hash values for the entire file contents. File contents will only be used for thehash value calculation and will not include operating system Metadata (*e.g.*, filename, file dates, etc.) values.

2. Removal of duplicate documents should be done for exact duplicates based on hash values at the parent document level (and at the family level for Messaging materials) and may be done across custodians.

3. If the responding party deduplicates identical ESI, the responding party shall provide custodian associations in the load file or a separate overlay file, including fields such as BegDoc, All Custodians, and DUPLICATE CUSTODIAN_SOURCEFILEPATHS, as listed in the agreed upon Metadata fields below, with delimiters that include duplicate custodian name information. Any overlay files shall be produced after every production and shall be regularly updated to account for rolling productions.

**D. System Files.** The parties shall "de-NIST" electronic file collections, removing commercially available operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 hash values.

**E. Time Zones.** When processing ESI, the parties shall select U.S. Eastern Time Zone (EST) as the time zone.

**F. Archive Files.** Archive file types (.zip, .rar) shall be uncompressed for processing; the uncompressed files shall be treated as extracted files for the purposes of this protocol. If the archive file is itself an attachment to a document, that parent-child relationship shall also be preserved.

G. **Bates Numbering and Unique Identifiers.** Documents produced in native format will be named with a Bates number and the original file name will be identified in the load file. For image files (TIFFs), each page of the produced document shall have a legible Bates number electronically stamped onto the image in such a manner that does not conceal or interfere with the information on the source document. There should be no other legend or stamp placed on the document image unless the document qualifies for confidential treatment pursuant to the terms of the parties' confidentiality agreement in this action, which is incorporated by reference herein, or unless the document has been redacted in accordance with applicable law or Court order.

H. **Electronic Text Files.** For each document produced, a single text file (.TXT) shall be provided along with the native or image files and associated Metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text shall be extracted directly from the native electronic file unless the document was redacted, and image file, or a physical file, in which cases a text file created using OCR will be produced in lieu of extracted text.

I. **Metadata.** The following list identifies the Metadata fields that the parties agree to include in load files, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations). Nothing in this order shall require any party to manually populate the value for any metadata field below or prevent the parties from using similar names for the fields below.

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number in format e.g., AB0000001) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID (Bates number in format e.g., AB0000005) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number in format e.g., AB0000001) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number in format e.g., AB0000012) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Attachment Count | | | | Indicates the number of attachments to the parent document |
| Email Conversation Index / Thread Text | | | ID used to tie together email threads. | |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM / DD / YYYY format) | The date the email was sent. | For email attachments, the Metadata associated with the attachment Native file, where available, otherwise no Metadata. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| TimeSent | | Time (HH:MM) or (HH:MM:SS) | The time an email was sent. | For email attachments, the Metadata associated with the attachment Native file, where available, otherwise no Metadata. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the Metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of an email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered Metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| All Custodians | All Custodians | Paragraph | The custodian(s) whose files contained the same email but whose copy of that email was removed from production during the de-duplication process. | The custodian(s) whose files contained the same document but whose copy of that document was removed from production during the de-duplication process. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| DateCreated | | Date (MM / DD / YYYY format) | | The date a document was created. |
| TimeCreated | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was created. |
| DateLastMod | | Date (MM / DD / YYYY format) | | The date a document was last modified. |
| TimeLastMod | | Time (HH:MM in Coordinated Universal Time (UTC)) | | The time a document was last modified. |
| FileName | | | | File name of the original file name. |
| FileExt | | Paragraph | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. |
| File Path / Original Path (to the extent available) | | E.g., Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. |
| DUPLICATE CUSTODIAN _SOURCEFIL EPATHS | | | Location of copies of file(s) that was (were) removed from production during the de-duplication process. | Location of copies of file(s) that was (were) removed from production during the de-duplication process. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| MD5HASH | | | The MD5 Hash value or de-duplication key assigned to a document. | The MD5 Hash value or de-duplication key assigned to a document. |
| REDACTED | | Paragraph | Identifies if an email has been redacted in full or part. | Identifies if a document has been redacted in full or part, or if an Excel file has been manually redacted resulting in another field altered. |
| NATIVE LINK | | E.g., D:\NATIVES\ABC00001.xls | The full path to a Native copy of a document. | The full path to a Native copy of a document. |

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files / Attachments)** |
|---|---|---|---|---|
| FULLTEXT | | E.g., D:\TEXT\ABC 00001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

**J.** **Attachments.** Email attachments must be mapped to their parent by the document or production number.

K. Non-Responsive Attachments. The parties agree that, where a document within a family is responsive (whether parent or child), the entire family will be produced (subject to any redaction or withholding as may be applicable for any other document).

**L.**

**M. Structured Data.** To the extent the discovery exchange process requires production of discoverable ESI contained in a database, disclosure of information such as the database name, business purpose, database owner, and field list may be necessary to inform the parties as to how to best produce relevant data. The parties agree to confer to consider whether, in lieu of producing the database, the parties can agree upon a set of queries to be made for discoverable information or upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable file (*e.g.*, Excel or CSV format) for review by the requesting party. Upon review of the reports, the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and report formats, or to request specific data from identified fields.

**N. Encrypted or Password Protected ESI.** For any ESI that exists in an encrypted format or is password protected, the producing party shall make reasonable efforts to provide the receiving party with means to gain access to the files. If the files are not decrypted prior to their production, the parties shall meet and confer in an effort to supply passwords and other information that will enable the receiving party to gain access.

**O. Data Security.** The parties will ensure that their respective counsel and any third-party vendor hosting data produced in this litigation maintain the appropriate level of security for produced information, in an effort to prevent security breach or loss of protected or proprietary information.

## V. PRIVILEGE LOGS

**A. Privilege Logging Procedure.** Privilege Logs shall be provided containing the following information:

1. a sequential number associated with each Privilege Log record;
2. the date of the document;
3. the Bates numbers of documents redacted;
4. to the extent reasonably available, the identity of all persons who sent, authored, signed or otherwise prepared the document, and identification of which of them are attorneys;
5. to the extent reasonably available, the identity of all persons designated as addressees or copyees along with other information about them necessary for the Requesting Party to assess the privilege (*e.g.*, title, department, job function, etc.) and identification of which of them are attorneys;
6. the title or subject of a document to the extent the title does not reveal privileged or work-product protected information;
7. a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;
8. the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

**B. Logging of Document Families**. Where multiple members of a document "family" (*e.g.*, an email attaching a memorandum or other document, etc.) are withheld or redacted on the grounds of privilege, immunity, or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship, provided however, that information logged must be sufficient to assess the privilege for each family member. By way of example, for an email with an attached memorandum, the log entry must provide all of the information outlined in Section V.A above for both the email and

memorandum, distinguishing the to, from, cc, bcc, dates, description, and privilege asserted for each document in the single entry. For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

**C.** The following documents presumptively need not be included on a Privilege Log:

i. Communications exclusively between a Party and its outside counsel regarding this Action; and

ii. Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this Action and created after commencement of this Action.

## VI. CLAWBACK AGREEMENT

**A.** The parties acknowledge that a large volume of information, documents and other files will be produced and/or exchanged during discovery in this action. Although the parties have exercised, and will continue to exercise, care to withhold all privileged information, documents containing privileged materials may be inadvertently produced nonetheless. The inadvertent inclusion in any production of documents or things protected from disclosure under any identifiable and applicable privilege or other legal protection, including the attorney-client privilege or work product doctrine, shall not waive any applicable privilege or protection.

**B.** In the event that a producing party discovers that privileged or protected document(s) or information have been inadvertently included in a production, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified of the inadvertent disclosure, a party: (i) must immediately return and destroy the specified information and any copies it has; (ii) must not use or disclose the information until the claim is resolved; (iii) must take reasonable steps to retrieve the information if the party disclosed it before being notified; and (iv) may promptly present the information to the Court under seal for

a determination of the claim. The producing party must preserve the information until the claim is resolved.

**C.** In the event that a receiving party discovers that it has received a document that it knows or has reasonable cause to believe is privileged and/or was inadvertently produced, notice shall be promptly provided to the producing party, and the receiving party shall immediately return and destroy such document(s) and/or the information disclosed therein without further review of such materials; and if there is a dispute regarding the document(s), that dispute may be promptly presented to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

## VII. COSTS

**A.** Each party will bear its own costs of production. The parties, however, reserve the right to seek cost shifting or object to any proposed cost-shifting, as appropriate, at a later time. Nothing in this ESI Protocol is intended to affect a party's right to seek reimbursement for costs associated with the collection, review, or production of documents as permitted by Court rule or applicable law.

## VIII. RIGHT TO SEEK ADDITIONAL DISCOVERY

**A.** The parties agree that they shall proceed in good faith in all respects concerning the production of documents and ESI hereunder. Nothing in this ESI Protocol is intended to limit a party's ability to seek additional discovery either by negotiation or through proper application to the Court.

## IX. AMENDMENTS TO THIS ESI PROTOCOL

**A.** No modifications or amendments to this ESI Protocol shall be made except upon the consent of the parties or, in the event the parties cannot reach an agreement, the filing of a

motion and a showing of good cause.

**IT IS FURTHER AGREED** that this Stipulation may be executed electronically, and s-signatures shall be deemed originals.

Dated: June 10, 2025

OVED & OVED LLP

By: */s/ Andrew J. Urgenson*
Andrew J. Urgenson, Esq.
*Attorneys for Plaintiff*
401 Greenwich Street
New York, New York 10013
(212) 226-2700
andrew@oved.com

PECKAR & ABRAMSON, P.C.

By: */s/ Brian D. Waller*
Brian D. Waller, Esq.
*Attorneys for Defendants*
1325 Avenue of the Americas, 10th Fl.
New York, New York, NY 10019
(212) 382-0909
BWaller@pecklaw.com

LAMONICA HERBST &
MANISCALCO, LLP

By: */s/ Lon J. Seidman*
Lon J. Seidman, Esq.
*Attorneys for Defendants*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500
LS@lhmlawfirm.com